UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                              Case No.: 8:23-cr-38-VMC-LSG

EVAN KLEAVON INGRAM,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

    The defendant Evan Kleavon Ingram moves to withdraw his guilty plea. Doc. 100. After a careful review and with the benefit of an evidentiary hearing, I recommend denying the motion.

**I.    BACKGROUND[1]**

    A February 1, 2023, indictment charges the defendant with seven counts of possessing with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C) and with four counts of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Doc. 1. Each count under Section 841(b)(1)(C) carries a maximum term of imprisonment of twenty years. Each count under Section 924(e)—four in total—has a mandatory minimum term of

---

[1] This discussion cites to items of record in this case, as well as the exhibits admitted into evidence by the United States and the defendant during the July 22, 2025, evidentiary hearing. Docs. 114, 115.

imprisonment of fifteen years. *See* Doc. 107 at 16;[2] U.S.S.G. § 4B1.4 ("A defendant who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924(e) is an armed career criminal.").

Senior Assistant Federal Public Defender Howard Anderson appeared on behalf of the defendant on February 13, 2023. Doc. 15. At each subsequent status conference, the defendant orally moved to continue trial. Docs. 18, 23, 28, 30, 33. On November 16, 2023, the defendant sought a sixty-day trial continuance and explained that "[t]his case will not be a trial" but will resolve with a guilty plea in December 2023. Doc. 39. The motion also mentioned pending litigation in the Supreme Court that "could affect the penalty status being faced by Mr. Ingram." Doc. 39. The case was moved to the January 2024 trial term, and the defendant signed a plea agreement and pleaded guilty to counts two and five of the indictment on January 4, 2024. Docs. 41, 43, 46.

During the plea colloquy, the judge inquired whether the defendant and Mr. Anderson had discussed the plea agreement. Doc. 107 at 9. Mr. Anderson responded that they had discussed the agreement "at length" and explained that the defendant had "some questions" about the mandatory minimum penalty on count five. *Id.* The defendant confirmed (1) that he had a full opportunity to review the facts and evidence with his lawyer, (2) that they discussed the option to take the case to trial, (3) that Mr. Anderson had done everything the defendant asked him to do, and

---

[2] The transcript of the plea colloquy was also admitted into evidence. Doc. 115-1.

(4) that the defendant was fully satisfied with Mr. Anderson's advice and representation in the case. Doc. 107 at 13–15.

After describing the penalties associated with each charge, the Court opened the floor to Mr. Anderson, who mentioned pending Supreme Court litigation and "other factors" that could mitigate the defendant's sentence and signaled his intent to request a delay in the defendant's sentencing. Doc. 107 at 9–10, 17. Mr. Anderson later explained that a favorable ruling from the Supreme Court, as well as the defendant's cooperating with the government, could "help [the defendant] get below that 15-year minimum mandatory." Doc. 107 at 18. Mr. Anderson added that the United States "provided a very fair plea agreement" and that "[t]his is not a case that we could take to trial" but that "there are some positive favorable things that could happen for him where he may not be facing the 15-year minimum at sentencing." Doc. 107 at 18. Accordingly, Mr. Anderson requested a 120-day delay in sentencing. Doc. 107 at 19–20. Following this discussion, the Court emphasized that neither a favorable Supreme Court ruling nor a reduction based on cooperation was guaranteed, that "[a]s it is right now, you're facing this sentence of 15 years' imprisonment and a maximum sentence of life imprisonment as to Count 5," and that if the Supreme Court decision "doesn't turn out to help you, that won't be a basis to withdraw from your guilty plea." Doc. 107 at 24, 28.

Later in the colloquy, the defendant raised a concern about his right to appeal under the waiver provision of his plea agreement, which the Court discussed at length. Doc. 107 at 33–37. Next, a discussion about the consequences of pleading

3

guilty occurred:

> THE COURT: If you do have any defenses to the charges against you in your case, any defenses that you do have would be lost by a guilty plea. Do you understand that?
>
> THE DEFENDANT: Did you say any defenses that I have would be taken away?
>
> THE COURT: Gone. Lost. That's right. Because you could raise those defenses at trial to those charges against you, but if you don't have a trial, you're giving up the right to raise any defenses that you do have to those charges. Why don't you take a moment to talk with Mr. Anderson about that.
>
> THE DEFENDANT: Okay.
>
> (Brief pause)
>
> THE DEFENDANT: Understood, ma'am.

Doc. 107 at 41.

A January 5, 2024, order adjudicates the defendant guilty on counts two and five and schedules a sentencing hearing for April 3, 2024. Doc. 53. Mr. Anderson moved to continue the sentencing pending the Supreme Court's decision in *Jackson v. United States*, No. 22-6640, and *Brown v. United States*, No. 22-6389.[3] Doc. 58. On May 1, 2024, Assistant Federal Defender Yvette Gray appeared as co-counsel for the

---

[3] The Supreme Court issued an opinion in both cases on May 23, 2024. *See Brown v. United States*, 602 U.S. 101 (2024).

defendant to assist in Mr. Anderson's absence. Docs. 61, 65. Ms. Gray participated in the first of two proffers that the defendant gave to law enforcement after his plea. Doc. 113 at 41:20–42:33. Shortly after the proffer, Ms. Gray moved to withdraw because her assistance was "no longer needed." Doc. 65. Citing a need for additional time to "develop mitigation to present to the Court at sentencing," Mr. Anderson again moved to continue. Doc. 62. An order grants that request and reschedules the sentencing for September 6, 2024. Docs. 63, 64, 67.

On August 4, 2024, local media reported that Clearwater Police Detective Frederick Lise had been arrested on public corruption charges stemming from his work with confidential informants Matthew Turner and Henry Smith. Doc. 115-3. Police reports show that Lise was the lead law enforcement officer on three of the eight occasions when the defendant sold drugs or guns to a confidential informant, including the August 22, 2022, sale, which forms the basis of count five. Docs. 114-1, 114-4, 114-6. Lise was an "authorized operator" on the other five occasions. Docs. 114-2, 114-3, 114-5, 114-7, 114-8. The charges against Lise derive from incidents on March 7, March 18-19, April 4, and April 17, 2024. Doc. 114-9.

The criminal complaint supporting Lise's arrest describes an investigation into a drug trafficking organization by the Pinellas County Sheriff's Office ("PCSO") beginning in August 2023. *Id.* "As the investigation continued, PCSO Narcotics detectives began to recognize their targets were potentially being provided information to thwart law enforcement's investigation." *Id.* Beginning on March 7, 2024, Lise provided Smith and Turner, who were targets of PCSO's investigation,

with confidential information from law enforcement databases. *Id.* Lise also worked with Smith and Turner to target other individuals so that Smith and Turner could appear to be "working" with Lise and receive credit for this assistance. *Id.*

Shortly thereafter, Mr. Anderson moved to reschedule the September 6, 2024, sentencing based on the public revelations about Detective Lise, as well as a conflict caused by Mr. Anderson's treatment for a medical condition. Doc. 68-1. Mr. Anderson explained, "[The defendant] has provided some previous assistance in a state of Florida criminal matter, however one of the investigators has come under investigation. This could possibly affect [the defendant]; his cooperation status and several other potential investigati[ve] matters being review by both the state and federal agencies." Doc. 68-1. Mr. Anderson moved five more times to continue the sentencing hearing, and each time mentioned the investigation of Detective Lise and the defendant's "co-operation status." Docs. 73-1, 75-1, 78-1, 83-1, 87-1.

On April 1, 2025, Assistant Federal Defender Mary Claire Wolf appeared and requested to substitute herself for Mr. Anderson as counsel for the defendant. Doc. 91. Special Agent Zach Nelson with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") testified that he participated that month in a proffer with the defendant, Ms. Wolf, and another ATF agent. Doc. 113 at 49:45–50:07. The purpose of the proffer, which the defendant requested, was to speak to agents about the alleged corruption of Detective Lise. *Id.* at 50:17–51:20. According to Nelson, the information provided by the defendant was "stale," not susceptible to corroboration, and not within ATF's investigative purview. *Id.* at 51:55–53:48. Nothing came of the

6

proffer, and the defendant received no benefit for this cooperation. *Id.* At the close of the proffer, the defendant expressed frustration about not receiving help from the U.S. Attorney's Office with a reduction in his sentence and ATF's lack of gratitude for the defendant's previous cooperation. *Id.* at 53:48-54:40.[4] The same month, Detective Lise was acquitted on all charges. Doc. 113 at 25:27–25:26:07, 37:00–37:04; Doc. 115-4.

On May 5, 2025, Ms. Wolf moved to withdraw as counsel. She claimed that the relationship between the defendant and the Federal Defender's office was "irretrievably broken" based on an April 29, 2025, call in which the defendant "assert[ed] that he feels he was coerced into signing the plea agreement and it was his understanding that he could still fight the ACCA enhancement." Doc. 92. A May 6, 2025, order appoints CJA counsel, who moved to continue the sentencing hearing and, shortly thereafter, moved to withdraw the defendant's guilty plea. Docs. 97, 100.

## II.     ANALYSIS

Rule 11(d)(2) permits a defendant to withdraw a guilty plea after the court accepts the plea but before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." The defendant bears the burden of showing a

---

[4] Before his charges in this case, the defendant was cooperating with ATF as a confidential informant. Doc. 113 at 54:54–56:00. Although the defendant suggested during the April 2025 proffer that he suspected Lise of corruption as far back as 2022, at no point during his cooperation with ATF in 2022 did the defendant say that he knew about an investigation into Detective Lise. *Id.* at 49:45–50:55, 56:00–56:30.

7

"fair and just reason." *United States v. Izquierdo*, 448 F.3d 1269, 1276 (11th Cir. 2006). A motion before sentencing must receive a liberal construction in favor of the accused. *United States v. Schubert*, 728 F.2d 1364, 1365 (11th Cir. 1984). "It is well settled, however, that there is no absolute right to withdraw a guilty plea prior to imposition of a sentence. The decision to allow withdrawal is left to the sound discretion of the trial court." *United States v. Buckles*, 843 F.2d 469, 471 (11th Cir. 1988). Only an arbitrary or unreasonable decision warrants reversal. *Id.* The good faith, credibility, and weight of a defendant's assertions in support of a motion withdraw "are issues for the trial court to decide." *Id.* at 472.

The "totality of the circumstances surrounding the plea" warrant consideration, together with factors including "(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved . . . ; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Buckles*, 843 F.2d at 472. "[T]he defendant's admission of factual guilt at the Rule 11 hearing and the timing of the motion to withdraw" may also warrant consideration. *United States v. Cesal*, 391 F.3d 1172, 1179 (11th Cir. 2004), *cert. granted, judgment vacated*, 545 U.S. 1101 (2005), *and opinion reinstated*, No. 03-15090, 2005 WL 1635303 (11th Cir. July 13, 2005); *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) (explaining that "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."). "'Although misinformation may be more vulnerable to constitutional challenge than mere lack of information . . . a

defendant seeking to set aside a guilty plea must at the very least show that correct information would have made a difference in his decision to plead guilty.'" *Schubert*, 728 F.2d at 1365.

### a. *The defendant had the close assistance of counsel.*

From the beginning of this case and until April 1, 2025, Mr. Anderson represented the defendant. During his direct testimony, the defendant testified that Mr. Anderson visited him once and reviewed the plea agreement with him a couple of hours before the plea hearing. Doc. 113 at 7:00–8:41. The defendant alluded to Mr. Anderson's recent death and claimed that, at the time of the defendant's plea hearing in January 2024, Mr. Anderson was forgetful, not in his "right mind," and "taking a long time off work." *Id.* The defendant felt "something wasn't right" but didn't know for sure. *Id.* The defendant testified that, after he learned of Detective Lise's arrest, he expected Mr. Anderson to move to withdraw the defendant's guilty plea and claimed that Mr. Anderson told him that the motion had been filed. Doc. 113 at 39:57–40:53.

At his plea hearing, the defendant mentioned none of his concerns about Mr. Anderson. Docs. 107 at 14–15; 113 at 23:50–24:23. Because of Mr. Anderson's recent death, only the defendant can speak to the frequency and substance of their communication. But his claims lack credibility, because neither the plea colloquy nor the circumstances of the defendant's plea suggest an addled, absent, or disinterested attorney. Mr. Anderson procured a plea to just two of the eleven counts of the indictment after ten months of trial continuances, one purpose of which was

9

awaiting the outcome of a Supreme Court case that could help his client. Nothing in the plea colloquy suggests that Mr. Anderson was forgetful or not in his "right mind." In fact, Mr. Anderson presented a clear plan to seek mitigation of his client's sentence either through a change in the law or through cooperation with law enforcement or both, which ensued over the next year and a half. At no time did the defendant raise a concern about Mr. Anderson's competence, advice, or frequency of communication, even when specifically asked by the judge during his plea colloquy. The defendant sought no new attorney, despite his alleged concerns about Mr. Anderson's health, and he participated in two proffers with law enforcement, undoubtedly on the advice of his attorney. The only indication of dissatisfaction with Mr. Anderson, other than the defendant's testimony at the recent evidentiary hearing, was the call described by Ms. Wolf in her May 2025 motion to withdraw.[5] *See* Doc. 92 at 2. The defendant's after-the-fact claims simply cannot override his sworn testimony at the plea colloquy and the other circumstances—including Mr. Anderson's cogent and thoughtful presentation at the plea hearing and his repeated communication with the Court about the defendant's mitigation efforts—which demonstrate that the defendant had the close assistance of counsel at the time of his plea.

    b. ***The defendant's plea was knowing and voluntary.***

The defendant was unaware of an investigation into Detective Lise at the time

---

[5] If true that the defendant "felt coerced" into pleading guilty, as explained by Ms. Wolf in her motion to withdraw, this would also suggest the absence of a mental impairment in Mr. Anderson.

he pleaded guilty. Doc. 113 at 9:59–10:18. So was law enforcement, according to Agent Nelson. Doc. 113 at 47:03–47:19. In fact, the complaint against Detective Lise suggests that PCSO's investigation of Lise began sometime after March 7, 2024, which is months after the defendant pleaded guilty. Doc. 114-9 (explaining that Lise accessed a law enforcement database with information about PCSO's investigation on March 7, 2024, which was three days after Henry Smith's first noted involvement in the drug trafficking organization under investigation by PCSO).[6] The defendant first learned about the investigation into Lise in August 2024 contemporaneous with local news reports. Doc. 113 at 24:34-25:26; Doc. 115-3. The defendant testified that, if he had known about Lise's investigation, he would not have pleaded guilty. Doc. 113 at 12:54–13:41. The circumstances of this case suggest otherwise.

The record shows that the defendant's decision to plead guilty was both knowing and voluntary. During the plea colloquy, the defendant consulted with Mr. Anderson and thereafter acknowledged his understanding that, by pleading guilty, he would lose the right to assert defenses to the charges against him. Furthermore, even after he learned about the investigation of Detective Lise in August 2024, the defendant filed no motion to withdraw his plea until eleven months later. He blames that omission on Mr. Anderson, but here too his claim lacks credibility. The defendant received new counsel in April 2025 and, rather than seeking to withdraw

---

[6] The defendant argues that the investigation into Lise began in August 2023, but that appears to be a misreading of the complaint against Lise, which says that PCSO's investigation into an individual named Deangelo Woods began on August 23, 2023. Doc. 114-9 at 8.

11

his plea at that time, participated in a second proffer with law enforcement. This is consistent with the message provided in successive continuance motions by Mr. Anderson—that the continued goal even after the public news of Detective Lise's charges was to seek sentence mitigation and not to try the case. Only after the efforts at mitigation failed did the defendant seek a new attorney and a withdrawal of his plea.

This case is factually distinct from *United States v. Valmont*, No. 8:23-cr-293-TPB-NHA, in which another defendant sought to withdraw his plea based on the charges against Detective Lise. In *Valmont*, the defendant pleaded guilty *after* the public revelation of Detective Lise's criminal charges, which neither he nor his counsel knew. *Id.* at Doc. 74. During his plea colloquy, Valmont appeared primed to challenge the propriety of confidential informant Henry Smith's work on his case, albeit for a different reason. *Id.* Valmont relied on his attorney's uninformed advice that such a challenge would be legally dubious. *Id.* Thus, when the defendant later learned of the investigation, he could credibly testify that he would not have pleaded guilty if he had known about the investigation of Lise and his handling of Smith. *Id.*

Here, the defendant persisted in his effort to seek cooperation credit after learning about Lise's investigation. This, together with the timing and circumstances of his plea, show that his guilty plea was knowing and voluntary.

    c.  *Withdrawal would not conserve judicial resources.*

Unlike the case in *Valmont*, the defendant here has not demonstrated that a critical aspect of his attorney's advice involved whether to challenge the confidential

informant's work on his case. *Valmont* at Doc. 74. The timing is also distinct. While Valmont's plea occurred after public disclosure of Lise's criminal charges, here the defendant's occurred many months before public disclosure (and, as suggested by the evidence, perhaps even before the investigation into Lise had begun). Thus, granting withdrawal of the plea is unlikely to conserve judicial resources by forestalling a due process or Sixth Amendment challenge.

### d. *The government would suffer some prejudice.*

Although the United States presents no specific evidence of prejudice, the passage of time alone suggests that the United States would suffer some prejudice by the withdrawal of the plea. The events charged in this case occurred in 2022, and more than two years have passed since the defendant's indictment and more than a year and half since his change of plea. "Although a district court need not find prejudice to the government before it can deny a defendant's motion to withdraw, it may take this factor into account when assessing the defendant's motion." *Buckles*, 843 F.2d at 474. Here, the district court can fairly consider "the time, money, and effort the government would have to devote to reassembling witnesses and evidence that were allowed to scatter after the acceptance of the guilty plea." *Id.*

13

### III. CONCLUSION

Accordingly, for the reasons explained above, I find that the defendant fails to present a "fair and just" reason for withdrawing his plea, and I recommend denying the motion, Doc. 100.

**REPORTED** in Tampa, Florida, on this 28th day of July, 2025.

_____
LINDSAY S. GRIFFIN
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from the day of service of this report either to file written objections to the proposed findings and recommendation or to seek an extension of the fourteen-day deadline. 28 U.S.C. § 636(b)(1)(C). Under Eleventh Circuit Rule 3-1, a party failing to object to a magistrate judge's findings or recommendations "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1). If the parties wish to expedite the resolution of this matter, they may promptly file a joint notice of no objection.